UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Civil Case Number: _____

**JOHN HEISTAND** and
**APRIL HEISTAND**, individually and
on behalf of a class of similarly
situated persons,

      *Plaintiffs*,

vs.

**EXPERIAN INFORMATION
SOLUTIONS, INC**. and
**UNITED TRANZACTIONS, LLC**,

      *Defendants*.
_____/

**CLASS ACTION**

**JURY TRIAL DEMANDED**

**CLASS ACTION COMPLAINT**
**FOR VIOLATIONS OF THE FAIR CREDIT REPORTING ACT, 15 U.S.C. §§ 1681**
*et seq.*

Plaintiffs JOHN HEISTAND and APRIL HEISTAND ("**Plaintiffs**"), on behalf of themselves and all similarly situated individuals, complain and allege against Defendants EXPERIAN INFORMATION SOLUTIONS, INC. ("**Experian**") and UNITED TRANZACTIONS, LLC ("**UTA**") (UTA and Experian collectively "**Defendants**"), as follows:

### I.    PRELIMINARY STATEMENT

1. This is a consumer class action brought on behalf of consumers who were subjected to violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq.* ("**FCRA**"). Plaintiffs contend that Defendant Experian systematically violates the rights of consumers by selling their consumer reports without any permissible purpose pursuant to the FCRA. Plaintiffs

1

further contend that Defendant UTA violates the rights of consumers by obtaining those reports without a permissible purpose.

2. The FCRA was enacted "to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy," 15 U.S.C. § 1681(a)(4), by operating "in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy" of the consumer information they disseminate.  15 U.S.C. § 1681(b).  Congress included in the statutory scheme a series of due-process-like protections that impose strict procedural rules on both "consumer reporting agencies" such as Experian, and "users" of "consumer reports" such as UTA.  This action involves Defendants' systematic violation of several of these important rules.

## II.   PARTIES

3. Plaintiffs John and April Heistand are adult individuals residing in Plant City, Hillsborough County, Florida.

4. Defendant Experian is a "person" and "consumer reporting agency" as defined by 15 U.S.C. § 1681a(b).  Defendant is headquartered at 475 Anton Boulevard, Costa Mesa, CA 92626.

5. Defendant UTA is a check guarantee service company, in that it guarantees the payment of checks issued to its clients, paying them for checks returned for "insufficient funds". UTA is also a "user" of "consumer reports" and a "debt collector" within the meaning of the federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692a(6) in that it regularly collects or attempts to collect, directly or indirectly, consumer debts originally due to another entity. Defendant has a principal place of business located at 3200 Executive Way, Miramar, FL 33025.

### III.   JURISDICTION AND VENUE

6. This Court has jurisdiction over this matter based upon 28 U.S.C. § 1331 and 15 U.S.C. § 1681p in that claims arise under the federal Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq*. Venue is properly in this District pursuant to 28 U.S.C. § 1391(b).

### IV.   FACTUAL ALLEGATIONS

7. During the month of July 2015, Ms. Heistand incurred a debt for automobile repairs and parts on her personal vehicle. Ms. Heistand allegedly wrote a check to Stingray Chevrolet, LLC ("**Stingray**") to pay the debt in the amount of $425, rounded to the nearest whole dollar. UTA guaranteed payment of the check to Stingray.

8. The check was supposedly returned unpaid to Stingray.

9. On information and belief, UTA paid Stingray the value of the check. Having paid Stingray, UTA was then entitled, under its contract with Stingray, to collect that sum from the issuer of the check and keep whatever it obtained.

10. The debt arose from services which were primarily for family, personal, or household purposes, specifically, repairs relating to a personal vehicle for Ms. Heistand, and meets the definition of "debt" under 15 U.S.C. § 1692a(5).

11. Around October 2015, United began attempts to collect the debt from the Heistands.

12. Around this time, UTA called Mr. Heistand's mother, Peggy Heistand ("**Peggy**"), and demanded to know how to get ahold of Mr. or Ms. Heistand. When Peggy asked what UTA's call was concerning, UTA's representative said it concerned a debt involving "fraud" and a "legal matter."

13. In or around November 2015, UTA called Mr. Heistand on his cell phone and attempted to collect the debt from him.

14. UTA's representative initially stated that Mr. Heistand had written the check.

15. Mr. Heistand stated that he had not written any check to Stingray, and rather, his wife had.

16. Thus, Mr. Heistand disputed the debt was his personal liability.

17. UTA's representative stated that unless Mr. Heistand paid the debt immediately, UTA would have an arrest-warrant issued for Ms. Heistand, and the police would take Ms. Heistand into custody later that day.

18. UTA's representative stated the call was regarding a "case number" and then listed a number.

19. At no point did UTA's representative state the call was from a debt collector or that the communication was from a debt collector.

20. UTA's representative implied he was associated with, or UTA was associated with, a district attorney.

21. Upon information and belief, these tactics are consistent with UTA's normal collection practices, in which consumers are routinely threatened with fraud charges, arrest, imprisonment, and more.

22. Upon information and belief, UTA's collection agents frequently fail to identify themselves as debt collectors in order to perpetuate the myth that they are law enforcement agents or are associated with law enforcement agents.

23. On or about August 13, 2015, UTA requested a consumer credit bureau report on both Mr. and Ms. Heistand from Experian Information Solutions, Inc. ("**Experian**"), a consumer credit reporting agency ("**CRA**").

24. To lawfully request a credit report from a CRA, the person making the request must have a "permissible purpose" to do so. 15 U.S.C. § 1681b.

25. Experian requires any person requesting a credit report on a consumer to first certify that they have a permissible purpose to obtain the report pursuant to the FCRA.

26. Upon information and belief, UTA certified to Experian its permissible purpose for requesting the credit reports on Mr. and Ms. Heistand was that UTA needed the information for "collection" purposes.

27. However, to have permissible purpose under the FCRA to request a report for "collection" purposes, the debt collector must be collecting on a debt which is considered to be a "credit transaction involving the consumer." 15 U.S.C. § 1681b(a)(3)(A).

28. Tendering a check is not a *credit transaction involving a consumer*, *i.e.*, one in which the consumer voluntarily participated and requested an extension of credit.

29. Thus, while UTA may have believed it was collecting on a lawful debt, it had no reason to believe the debt related to *a credit transaction involving the consumer*.

30. Further, the paper check which created the debt was signed by only one individual.

31. As such, there was no way UTA reasonably could have believed it had the right to request credit reports on two different people.

32. Around November 2015, UTA began reporting the debt as an unpaid collection to at least three nationwide CRAs, Equifax, Experian and Trans Union.

33. UTA reported that Mr. Heistand was the debtor and that $465 was delinquent to UTA.

34. UTA reported to Experian that the debt was "individual," *i.e.*, no other person was liable for the debt. *Id.*

35. Despite knowing that Mr. Heistand disputed owing the debt, UTA failed to report the debt as "disputed" in its reports to Experian in November and December 2015, and in January 2016, and in its report on April 6, 2016 to Equifax.

36. Upon information and belief, Experian maintains detailed files on its subscribers whom it authorizes to electronically request credit reports on consumers.

37. Included in these files is a description of the nature of each subscriber's business.

38. Experian knows that UTA is a debt collector and "check guarantee" company whose business substantially consists of guaranteeing the payment of checks tendered to businesses, and the collection of checks from consumers whose checks do not clear their banks and are presented to UTA for guarantee.

39. Further, Experian is aware of the nature of UTA's business because UTA is a furnisher of information to Experian, and all or virtually all of the information it furnishes to Experian relates to its attempts to collect returned checks.

40. Every, or nearly every, tradeline reported by UTA to Experian utilizes the "creditor classification code" ("**CCC**") of "check guarantee."

41. Additionally, even a cursory examination of UTA's website, www.unitedtranzactions.com, shows that its business relates to the processing and guaranteeing of checks for merchants, stating, "if your checks return unpaid, we will reimburse you IN FULL and we become responsible for the tedious and difficult check collections process, not you."

42. Experian has been held liable for providing reports to debt collectors who were collecting non-credit-based debts, since these actions are in contravention of the FCRA.

43. Despite this, Experian continues to sell credit reports to companies such as UTA who regularly obtain credit reports from it, even when the underlying debt is a non-credit-based transaction. Each of these credit reports is provided without one of the limited permissible purposes specifically provided for under the FCRA, which was intended to protect consumers' privacy interests as a substantive right.

44. UTA's impermissible accessing of credit reports, and Experian's provision of such reports without a permissible purpose, invaded the privacy of Mr. and Mrs. Heistand and of each other consumer about whom UTA obtained, and Experian provided, a credit report for which the underlying debt was not a credit transaction.

45. Further, UTA's impermissible access of credit reports, and Experian's provision of such reports without a permissible purpose, disclosed to UTA the highly-sensitive personal information of consumers, such as credit card account balances and numbers, mortgage history and payments, employer names and phone numbers, dates of birth, Social Security numbers, and more; frequently, UTA utilized this information to which it was not legally entitled in its attempts to collect debts from these consumers.

## V. CLASS ACTION ALLEGATIONS

46. Plaintiff realleges and incorporates by reference all preceding paragraphs as alleged above.

47. Plaintiff brings this action pursuant to the Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of the following Classes:

    a.    All natural persons residing in the United States of America whose Experian consumer credit reports were obtained by UTA in connection with UTA's collection of an allegedly returned check within two years prior to the filing of this Complaint and up through the date of adjudication of this matter;

    b.    All natural persons residing in the United States of America whose Experian consumer credit reports were obtained by UTA in connection with UTA's collection of an allegedly returned check within five years prior to the filing of this Complaint and up through the date of adjudication of this matter.

    c.    All natural persons residing in the United States of America whose Experian consumer credit reports were obtained in connection with the collection of a returned check that had been written by another person within two years prior to the filing of this Complaint and up through the date of adjudication of this matter.

    d.    All natural persons residing in the United States of America whose Experian consumer credit reports were obtained in connection with the collection of a returned check that had been written by another person within five years prior to the filing of this Complaint and up through the date of adjudication of this matter.

48.    Plaintiff reserves the right to amend the definition of the Classes based on discovery or legal developments.

49.    **Numerosity**. FED. R. CIV. P. 23(a)(1). The Class members are so numerous that joinder of all is impractical. Although the precise number of Class members is known only to Experian and UTA, the names and addresses of the Class members are identifiable through documents maintained by Experian and UTA.

50.    **Existence and Predominance of Common Questions of Law and Fact**. FED. R. CIV. P. 23(a)(2). Common questions of law and fact exist as to all members of the **Class**, and predominate over the questions affecting only individual members. The common, legal and factual questions include, among others:

    a.    Whether Defendant Experian systematically violated the rights of consumers by disclosing consumer reports without any FCRA permissible purpose.

  b.  Whether Defendant UTA violated the rights of consumers by obtaining those reports without a permissible purpose.

  c.  Whether Defendant Experian's conduct was willful under the FCRA;

  d.  Whether Defendant UTA's conduct was willful under the FCRA.

51. **Typicality**. FED. R. CIV. P. 23(a)(3). Plaintiff's claims are typical of the claims of each Class member, which all arise from the same operative facts and are based on the same legal theories. Experian disclosed consumer reports without a permissible purpose. UTA obtained consumer reports without a permissible purpose. Plaintiffs have the same claims for statutory, actual and punitive damages that they seek for absent class members.

52. **Adequacy**. FED. R. CIV. P. 23(a)(4). Plaintiffs are adequate representatives of the Class. Their interests are aligned with, and are not antagonistic to, the interests of the members of the Class they seek to represent. They have retained counsel competent and experienced in such litigation, and they intend to prosecute this action vigorously. Plaintiffs and their counsel will fairly and adequately protect the interests of members of the Class.

53. **Predominance and Superiority**. FED. R. CIV. P. 23(b)(3). Questions of law and fact, common to the Class members predominate over questions affecting only individual Class members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Experian's conduct described in this Complaint stems from common and uniform practices, resulting in common violations of the FCRA. Members of the Classes do not have an interest in pursuing separate actions against Experian and UTA, as the amount of each Class member's individual claim is small compared to the expense and burden of individual prosecution. Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Experian's and UTA's practices. Moreover, management of this action as a class action will not likely present any difficulties. In

the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all Class members' claims in a single forum.

54. This action should be maintained as a class action because the prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications with respect to individual members, which would establish incompatible standards of conduct for the parties opposing the Classes, as well as a risk of adjudications with respect to individual members, which would as a practical matter be dispositive of the interests of other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

## COUNT I
## UTA'S VIOLATION OF THE FCRA – 15 U.S.C. § 1681, *et. seq*

55. The Heistands adopt and incorporate paragraphs 1 - 45 as if fully stated herein.

56. Because UTA lacked a permissible purpose to obtain Mr. Heistand's credit report, UTA willfully and intentionally violated the FCRA, 15 U.S.C. § 1681b(f), when it requested a credit report on Mr. Heistand from Experian in August 2015.

57. Because UTA lacked a permissible purpose to obtain Ms. Heistand's credit report, UTA willfully and intentionally violated the FCRA, 15 U.S.C. § 1681b(f), when it requested a credit report on Ms. Heistand from Experian in August 2015.

58. UTA was fully aware that the debt it sought to collect was not a credit transaction and that the credit reports it requested had no connection to any credit transaction.

59. UTA was fully aware that only one person owed the debt, yet it requested credit reports on two different individuals.

60. UTA is liable to Plaintiffs and all Class members for the above-stated violation of the FCRA in the amount of actual damages or statutory damages not to exceed $1,000 per incident, plus their reasonable attorney fees and costs.

## COUNT II
## EXPERIAN'S VIOLATION OF THE FCRA – 15 U.S.C. § 1681, *et. seq*

61. The Heistands adopt and incorporate paragraphs 1 - 45 as if fully stated herein.

62. At all times relevant, Experian was aware of the nature of UTA's business, *i.e.*, that it collected on non-credit-based debts.

63. Because Experian knew or should have known that UTA lacked a permissible purpose to obtain Plaintiffs' credit reports, Experian willfully and intentionally violated the FCRA, 15 U.S.C. § 1681b(a), when it provided credit report(s) on the Heistands to UTA in August 2015, and Experian knew, or should have known, that no permissible purpose existed because Experian knew, or should have known, that UTA was not requesting the credit report in connection with the collection of a credit transaction involving the Heistands, since UTA collects only non-credit-based debts.

64. Experian was aware that it was providing credit reports to UTA on an on-going basis despite there being no permissible purpose to do so under the FCRA.

65. Experian is liable to the Plaintiffs and Class members for the above-stated violation of the FCRA, and the Heistands are thereby entitled to an award of actual damages or statutory damages not to exceed $1,000 per incident, plus their reasonable attorney fees and costs.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff and the Classes pray for relief as follows:

A. An order certifying the case as a class action on behalf of the proposed Classes under Federal Rule of Civil Procedure 23 and appointing Plaintiff and the undersigned counsel of record to represent same;

B. A permanent injunction requiring Defendants to: (1) cease disclosing consumer reports without a permissible purpose; and, (2) cease obtaining consumer reports without a permissible purpose.

C. An award of statutory, actual and punitive damages for Plaintiffs and the Classes;

D. An award of pre-judgment and post-judgment interest as provided by law;

E. An award of attorneys' fees and costs; and,

F. Such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby requests and demands a jury trial on all issues triable by jury.

Dated:   January 5, 2016

>Respectfully submitted,
>
>/s/Philip R. Goldberg
>Philip R. Goldberg
>
>**SERAPH LEGAL, P.A.**
>Philip R. Goldberg
>FL BAR # 0105940
>2002 E. 5th Avenue, Suite 104
>Tampa, FL 33605
>Tel: 813-567-1230
>Fax: 855-500-0705
>
>**FRANCIS & MAILMAN, P.C.**
>James A. Francis (*pro hac vice* forthcoming)
>John Soumilas (*pro hac vice* forthcoming)
>Land Title Building, 19th Floor
>100 South Broad Street
>Philadelphia, PA 19110
>Tel. (215) 735-8600
>Fax. (215) 950-8000